UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IVAN MARTINEZ-HERNANDEZ,

                          Petitioner,

        v.

PAMELA BONDI, KRISTI NOEM,
LAURA HERMOSILLO, BRUCE SCOTT,
UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,

                          Respondent.

CASE NO. 2:26-cv-00564-BAT

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS
IN PART**

Petitioner, Ivan Martinez-Hernandez, through counsel, has filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2241. Dkt. 1. Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). *Id.*

Petitioner alleges violations of Due Process under the Fifth Amendment, the Eighth Amendment, the Administrative Procedures Act, as well as statute and regulations, and seeks an order (a) immediately releasing him from custody; (b) preventing re-detention unless the Government establishes by clear and convincing evidence at a hearing before a neutral decisionmaker that Petitioner is a flight risk or a danger to the community, based on changed circumstances after their most recent release by ICE; (c) and otherwise preventing re-detention of Petitioner unless the government (1) obtains a valid travel document to Cuba for him, (2)

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 1

provides the valid travel document to him and his counsel, (3) offers Petitioner the opportunity to leave on his own within two months, and (4) Petitioner does not leave. Under such circumstances the Government may be permitted to re-detain Petitioner provided it has already made concrete arrangements for him to be put on a flight to Cuba in the reasonably foreseeable future; (d) preventing removal to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; and (e) preventing Petitioner's removal to any country where he is likely to face imprisonment or other punishment upon arrival. *Id.*

## BACKGROUND

Petitioner is a native and citizen of Cuba, who applied for admission to the United States on or about April 11, 1995. Dkt. 10 (Decl. of Kurtis Reed ("Reed Decl.") at ¶ 3; Dkt. 11 (Decl. of Jennifer Wong ("Wong Decl.") at Ex. 1 (Form I-213). He was determined to be inadmissible under Section 212(a)(7)(A)(i)(I) of the INA but was granted parole into the United States until April 10, 1997. *See* Dkt. 10 (Reed Decl.) at ¶ 3. After the expiration the one year on April 10, 1997, Petitioner remained in the United States. *Id.* at ¶ 4. On March 8, 2020, Petitioner was arrested for driving under the influence ("DUI") and principal possession of controlled substance.[1] *Id.* ¶ 5. Due to this criminal arrest, Petitioner was encountered by ICE at the Collier County Jail. *Id.* ¶ 6. On June 23, 2020, Petitioner was convicted of the DUI offense, adjudication was withheld for the possession of a controlled substance offense, but Petitioner was found

---

[1] The Government asserts that from 1999 to 2020, Petitioner was arrested for multiple offenses, primarily related to driving with a suspended license, but for all but one of the arrests the Government indicates the charges were either dropped or the disposition is "unknown." Dkt. 10 at 2-3. The only arrest for which the Government provides information about the disposition is a 2001 arrest where Petitioner was found guilty of driving while license suspended and "adjudication was withheld, and he was given 1 year of probation." *Id.*

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 2

guilty of both offenses and was sentenced to 107 days of imprisonment with 12 months of supervision. *Id.* ¶ 5.

On June 23, 2020, Petitioner was taken into ICE custody and issued a Notice to Appear ("NTA"), charging him with inadmissibility under INA § 212(a)(7)(A)(i)((I), for lack of valid entry documents at the time of application for admission, and INA § 212(a)(2)(A)(i), for a controlled substance offense, and placed in removal proceedings. Dkt. 10 (Reed Decl.) at ¶ 7; Dkt. 11 (Wong Decl.) at Ex. 2 (Notice to Appear).

On July 20, 2020, Petitioner appeared for a master calendar hearing in Krome, Florida immigration court and conceded the charges of removability. Dkt. 10 (Reed Decl.) at ¶ 8. On August 11, 2020, Petitioner was ordered removed to Cuba, and he waived his right to seek relief in immigration proceedings, including asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Dkt. 11 (Wong Decl.) at Ex. 3 (Order of Removal); Dkt. 10 (Reed Decl.) at ¶ 9. Petitioner waived appeal, making the August 11, 2020, order of removal a final order of removal. Dkt. 11 (Wong Decl.) at Ex. 3; 8 C.F.R. § 1241.1.

On August 24, 2020, Petitioner was released on an Order of Supervision ("OSUP") because ICE did not believe that they could repatriate Petitioner to Cuba at that time. Dkt. 10 (Reed Decl.) at ¶ 10; Dkt. 11 (Wong Decl.) at Ex. 4 (OSUP). The OSUP set forth several conditions of release, such as requiring him to report as directed and not commit any "crimes" and explained that he could be returned to ICE custody for violations.[2] *Id.*

On May 25, 2023, Petitioner was arrested by the Florida Highway Patrol for driving while license suspended and was later found guilty of the offense. Dkt. 10 (Reed Decl.) at ¶ 5.

---

[2] The Court notes that the declaration of Deportation Officer Kurtis Reed states that a condition of the OSUP was that Petitioner may not commit "violations of federal, state, or local law" but the terms of the OSUP itself states only that Petitioner may not commit any "crimes." Dkt. 10 (Reed Decl.) at ¶ 10; Dkt. 11 (Wong Decl.) at Ex. 4 (OSUP).

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 3

On May 27, 2025, Petitioner was arrested by ICE during a scheduled check-in. *Id*. ¶ 11. On June 3, 2025, ICE determined that there was not a significant likelihood that Petitioner would be removed to Cuba in the reasonably foreseeable future. *Id.* at ¶ 13.

On or about June 25, 2025, Petitioner was informed of ICE's intent to remove him to Mexico. *Id.* at ¶ 14. Petitioner refused to be removed to Mexico. *Id.* Petitioner claimed fear of being removed to Mexico. *Id.* On or about July 1, 2025, Petitioner's fear claim based on the potential third country removal to Mexico was referred to the United States Citizenship and Immigration Services ("USCIS"). *Id.*at ¶ 15.

On July 1, 2025, Petitioner filed an application to adjust status, Form I-485, with USCIS, and this application is currently pending. *Id.* at ¶ 16. He subsequently filed a motion to reopen his immigration proceedings based on his newly-filed application to adjust, and on August 14, 2025, Petitioner's motion to reopen was denied. *See id.* at ¶ 17. The Immigration Judge found Petitioner to be ineligible for adjustment of status based on his controlled substance conviction. *Id.* On February 20, 2026, USCIS determined that Petitioner failed to establish that he has a credible fear of removal to Mexico. *Id.* at ¶ 21.

The Government presents the declaration of Deportation Officer Kurtis Reed who states that "ICE has also followed up with the International Operations Division ("IOD") for Cuba regarding Petitioner's potential to Cuba on December 23, 2025, and February 10, 2026, and the Government of Cuba is not currently willing to repatriate Petitioner at this time, but this may change in the immediate future." *Id.* at ¶¶ 19-20, 22. He further states that "ICE is making reasonable efforts to effectuate Petitioner's removal to Mexico. ICE has not yet secured travel documents to Mexico for Petitioner and has not made an attempt to conduct a removal operation to Mexico. There have been no failed removal operations to Mexico." *Id.* at ¶¶ 23-24.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 4

**DISCUSSION**

**A.     Re-Detention**

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 5

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). And district courts have subsequently applied the *Mathews* test in similar circumstances. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21, n. 4 (W.D. Wash. Aug. 19, 2025); *Rodriguez Jimenez v. Bondi*, 25-cv-02167-RSM, 2025 WL 3466925 (W.D. Wash. Dec. 3, 2025). Accordingly, the Court will consider each *Mathews* factor in turn to determine whether Petitioner's arrest and detention comport with constitutional due process requirements.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). Petitioner has lived in the United States since 1995, is married with four children (who are all United States citizens) and has been gainfully employed in construction and asphalt work since his arrival. Dkt. 1 at 6. That Petitioner was arrested after being out of ICE custody for more than four years on an OSUP, has currently been re-detained for ten months while the Government has failed to effectuate his removal (after previously failing to effectuate his removal when he was detained for two months post-order of removal in 2020) and remains in custody, undoubtedly deprives him of an established interest in his liberty.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest is high under the facts of this case unless the Government provides adequate notice of the reasons for his re-detention and a meaningful opportunity to respond. *See, E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316. Here, Petitioner was released on an OSUP in August 2020 and, apart from being found guilty of driving with a suspended license on one occasion in May 2023, the Government does not argue that he violated

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 6

his OSUP on any other occasions between August 2020 and May 2025 when he was re-detained. The record is also unclear as to whether Petitioner was found guilty of a "crime" as designated in the OSUP as a potential basis for revocation and return to custody. The Government indicates Petitioner was found guilty of driving with a suspended license, but it is unclear whether he was found guilty of a civil or criminal offense. The Court notes that Florida law appears to provide that, depending on the circumstances, driving with a suspended license can be considered either a "moving violation", a misdemeanor or a felony. *See* § 322.34, Fla. Stat. Furthermore, there is no evidence that Petitioner was given any information regarding the reasons for his re-detention nor is there evidence or argument presented by the Government of any changed circumstance regarding the likelihood of his removal or that Petitioner was given notice of any changed circumstance since his release.

In fact, as Petitioner also contends, and the Government does not dispute, the record reflects Petitioner's re-detention violates the Government's own regulations, specifically 8 C.F.R. § 241.13. That regulation states, in part, that "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. §§ 241.13(i)(2). The regulation also states, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and that there will be

> an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 7

8 C.F.R. §§ 241.13(i)(3).

`The Government does not allege that Petitioner was given a notice of the reasons for his revocation or an informal interview. There is no evidence Petitioner was provided any reason for why his OSUP was being revoked. Respondents, in their brief, assert that Petitioner's OSUP was revoked due to the fact that he was found guilty of driving with a suspended license in May 2023. But, as noted above, it is unclear if this was a criminal or civil offense, and there is no evidence submitted that this was the reason for Petitioner's re-detention. Moreover, the fact that Petitioner was not re-detained until 2 years after he was found guilty of this offense raise concerns that this was not, in fact, the reason for Petitioner's re-detention in May 2025. *See E.A. T.-B.*, 795 F. Supp. 3d at 1322 ("Considering the timeline of the alleged violations vis-a-vis other Government actions in Petitioner's favor, *i.e.* his reduced ATD reporting requirements and work authorization, these circumstances raise concerns that Petitioner's arrest was not in fact motivated by his ATD violations."). Furthermore, nothing about the offense of driving with a suspended license in and of itself, without additional facts, supports an inference that Petitioner is a risk of flight or danger to the community.

The Government asserts, through the declaration of deportation officer Reed, that "ICE has also followed up with the International Operations Division ("IOD") for Cuba regarding Petitioner's potential to Cuba on December 23, 2025, and February 10, 2026, and the Government of Cuba is not currently willing to repatriate Petitioner at this time, but this may change in the immediate future." Dkt. 10 (Reed Decl.) ¶¶ 19-20, 22. He further states that "ICE is making reasonable efforts to effectuate Petitioner's removal to Mexico. ICE has not yet secured travel documents to Mexico for Petitioner and has not made an attempt to conduct a removal operation to Mexico." *Id.* at ¶¶ 23-24.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 8

Officer Reed gives no facts or evidence, that they will be able to remove Petitioner to Cuba now when they have been unable to do so since 2020. Officer Reed also gives no facts or evidence to indicate that the Government is likely to be able to secure travel documents to Mexico or that they will ultimately be able to remove Petitioner to Mexico, despite his objection to being removed there. Respondents present no evidence of changed circumstance indicating there is a significant likelihood that Petitioner may now be removed in the reasonably foreseeable future.

The Court notes that this Court has ordered the immediate release of a petitioner in similar circumstances finding that the regulations certainly appear to require "an individualized determination about the likelihood of removal based on changed circumstances, followed by notice and an opportunity to respond." *Phetsadakone v. Scott*, No. 2:25-cv-01678-JNW, 2025 U.S. Dist. LEXIS 173785, at *8 (W.D. Wash. Sept. 5, 2025); *Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *6 (W.D. Wash. Dec. 24, 2025).

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. The Government has an interest in ensuring a noncitizen with a final order of removal appears when necessary to facilitate their removal and in ensuring the noncitizen is not a danger to the community. *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). But here Petitioner has been living for years in the United States with permission under an OSUP, there is no evidence of a change in circumstance such that his removal became reasonably foreseeable, and the single offense of driving without a license committed two years before his re-detention, does not justify his re-detention without any process. And, in fact, the Government has failed to follow their own

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 9

regulations which, at least to some extent, contemplate the Government's interests, in revoking Petitioner's release. *Tran*, 2025 WL 3725677, at \*6. The Court finds that the Government's interest here is low. *Id.*; *E.A. T.-B.*, 795 F. Supp. 3d 1316; *Tran*, 2025 WL 3725677, at \*6.

Based on this review of the *Mathews* factors, the Court finds that Petitioner re-detention without any process violated his Due Process rights.

**B.    Indefinite Detention**

Petitioner argues he is indefinitely detained within the meaning of *Zadvydas v. Davis*, and he is entitled to release. 533 U.S. 678 (2001).

The parties agree petitioner is detained under 8 U.S.C. § 1231, which governs the detention and release of noncitizens who have been ordered removed (as opposed to noncitizens apprehended at the border under § 1225, or those not yet ordered removed, § 1226). Section 1231(a) provides that the Department of Homeland Security ("DHS") is required to detain a noncitizen during a 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, or to release them on supervision. 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 10

likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

Under the relevant regulations, once it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, noncitizens may be released on an Order of Supervision. 8 C.F.R. § 241.13(h). Under 8 C.F.R. § 241.13(i)(2) "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." The regulation also states, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and that there will be an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. 8 C.F.R. §§ 241.13(i)(3).

Here, Petitioner asserts, and the Government does not dispute, that he has been held in detention, for purposes of the *Zadvydas* analysis, for over six months. The record reflects that a final order of removal issued in August 2020, and Petitioner was re-detained in May 2025 and has not been released since that time. Thus, the presumptively reasonable period for detention under *Zadvydas* has expired. 533 U.S. 678.

Through his petition, reply, and uncontroverted assertions, Petitioner has shown the Government has made no progress toward obtaining travel documents for either Cuba or Mexico. He has also shown that there is no evidence of changed circumstance showing the Government will be able to remove Petitioner to Cuba now when they have been unable to do so since 2020 and have previously found on two occasions there is no significant likelihood of removal in the reasonably foreseeable future. And, aside from giving Petitioner a notice of intent to remove him to Mexico on June 25, 2025, there is no indication the Government has made any progress toward removing him to Mexico.

Petitioner also submits a declaration dated November 2025, previously submitted in support of another immigration habeas case (*Rios v. Noem*, No. 250cv028660 (S.D. Cal. 2025), from a Deportation Officer in San Diego stating that ICE had driven the petitioner in that case, a Cuban national, to the Mexican border to effectuate his "third country resettlement" but the individual refused to go willingly to Mexico and "[t]he Mexican government was ready to accept [the individual] only if he would willingly go to Mexico." Dkt. 1-2 (Declaration of Deportation Officer Martin Parsons ("Parsons Decl.)). Courts in this district have also found that Petitioner's third-country removal to Mexico was not reasonably foreseeable where there was unrebutted evidence presented that Mexico was only willing to accept individuals for third-country removal if the individuals themselves are willing to go. *See, e.g.*, *Olea Sanchez v. Bondi*, No. CV25-2573-KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026) (finding evidence, including the Parsons Declaration, that Mexico conditioned the acceptance of non-Mexicans on their willingness to be removed there and that this casts doubt on the Government's ability to remove Petitioner to Mexico); *Rodriguez-Fernandez v. Bondi*, No. CV26-170-TMC, 2026 WL 445562 (W.D. Wash. Feb. 17, 2026) (finding indefinite detention of Cuban national notwithstanding Respondents'

plan to remove Petitioner to Mexico where Petitioner refused Mexico as a third country and evidence, including Parsons Declaration, that "the Mexican government only accepts individuals who *consent* to removal there").

The Court finds Petitioner has met his initial burden of showing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

The Government's evidence consists largely of the declaration of Deportation Officer Reed who states that "ICE has also followed up with the International Operations Division ("IOD") for Cuba regarding Petitioner's potential to Cuba on December 23, 2025, and February 10, 2026, and the Government of Cuba is not currently willing to repatriate Petitioner at this time, but this may change in the immediate future" and that "ICE is making reasonable efforts to effectuate Petitioner's removal to Mexico [but] has not yet secured travel documents to Mexico for Petitioner and has not made an attempt to conduct a removal operation to Mexico.." *Id.* at ¶¶ 19-20, 22-24. "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. Aug. 21, 2025); *Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *3 (W.D. Wash. Jan. 28, 2026).

Under the circumstances, the Government's conclusory assertion that Cuba's refusal to repatriate Petitioner "may change" and that they are "making reasonable efforts to effectuate removal to Mexico [but] ha[ve] not yet secured travel documents to Mexico" without specific facts indicating when or if Petitioner's removal is likely to occur in the reasonably foreseeable future, fails to rebut Petitioner's showing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 13

Accordingly, Petitioner's continued detention has become "indefinite" within the meaning of *Zadvydas* and he is entitled to release. 533 U.S. at 682.

**C.    Request for Injunctive Relief Related to Re-Detention**

Petitioner also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event ICE re-detains him. Specifically, he requests an order preventing the Government from re-detaining him unless the Government establishes by clear and convincing evidence at a hearing before a neutral decisionmaker that petitioner is a flight risk or a danger to the community, based on changed circumstances after their most recent release by ICE. Because Petitioner's claims invoke the Court's habeas and federal question jurisdiction, the Court may provide equitable relief on those claims if petitioner meets the standard for a permanent injunction. *See Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020).

The Court adopts the analysis on this issue recently set forth by the Court in *THAN DINH LE, Petitioner(s), v. PAMELA BONDI, et al., Respondent(s). Additional Party Names: Dep't of Homeland Sec., Immigr. & Customs Enf't,* No. C25-2454-KKE, 2026 WL 309239, at *6 (W.D. Wash. Feb. 5, 2026):

> Given Respondents' well-documented and widespread failures to comply with 8 C.F.R. § 241.13(i)(3) (in this case and countless others throughout the country[3]), [Petitioner's] concerns regarding re-detention without process are not speculative… However, notwithstanding [Petitioner's] well-founded fear of future regulatory violations, the Court cannot determine on this record whether due process

---

[3] [FN 2 by *Le* Court] *See, e.g., Lecky v. Bondi*, No. 2:25-CV-02637-TLF, 2026 WL 266066, at *5 (W.D. Wash. Feb. 2, 2026) (Government failed to provide evidence of an informal interview, revocation custody review, or evaluation of contested facts); *Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *10 (S.D. Tex. Jan. 28, 2026) (Government failed to show petitioner received notice of OSUP revocation or any internal procedures to evaluate his changed circumstances justifying re-detention); *Hagos v. Noem*, No. 3:26-CV-150-JES-DEB, 2026 WL 202873, at *3–6 (S.D. Cal. Jan. 27, 2026) (Government failed to provide an opportunity to submit evidence contesting OSUP revocation and failed to show a basis for ICE's determination of changed circumstances); *Tran v. Bondi*, No. 2:25- CV-02335-DGE-TLF, 2025 WL 3725677, at *5–7 (W.D. Wash. Dec. 24, 2025) (Government re-detained petitioner without a basis to conclude that changed circumstances supported a reasonably foreseeable removal); *Rodriguez v. Bondi*, No. C25-2167-RSM, 2025 WL 3466925, at *2-3 (W.D. Wash. Dec. 3, 2025) (Government could not "confirm whether Petitioner received an informal interview pursuant to 8 C.F.R. § 241.13(i)(3)").

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 14

would require a pre-detention hearing before an IJ in a hypothetical re-detention regardless of the circumstances. Constitutional due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" but, rather, "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citations omitted).

The Government does not dispute that 8 C.F.R. § 241.13(i) would govern any future revocation of [Petitioner's] release. Accordingly, at this juncture, the Court finds it sufficient to order that, if Respondents revoke [Petitioner's] OSUP and re-detain him in the future, they must fully comply with the procedure set forth in 8 C.F.R. § 241.13(i), including a meaningful opportunity for [Petitioner] to know and contest the basis for the revocation. In declining [Petitioner's] request to determine, at this time, whether a pre-detention hearing before an IJ is necessarily required in all cases, the Court is not foreclosing [Petitioner's] ability to challenge—on procedural due process or other grounds—any revocation of his OSUP in the future, at which time the Court would have the benefit of a record of the particular circumstances at issue.

## D.    Third Country Removal

Petitioner also seeks an order preventing his removal to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings and an order barring removal to any third country pursuant to the Government's "punitive removal policy." Dkt. 1 at 3.

### 1.  D.V.D. Class Membership

The Government argues that the Court should deny Petitioner's requests for relief relating to his third country removal claims as a matter of comity because he is a member of the certified class in *D.V.D. v. U.S. Dep't of Homeland Security*, Case No. C25-10676 (D. Mass.). Dkt. 9 at 11-12. The Government also argues the Court should exercise its discretion to dismiss Petitioner's third country removal claims because they seek the same relief as the class action claims. *Id.*

Courts in this district have consistently rejected the arguments raised by the Government. *See Nguyen*, 796 F. Supp. 3d at 729-32; *Coke*, 2026 WL 221514, at *3. The Court adopts the *Nguyen* court's analysis of this issue and its findings that "[t]he class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 15

removal[.]" *Nguyen*, 796 F. Supp. 3d at 729-32; *Sanchez v. Bondi*, No. C25-2573-KKE, 2026 WL 160882, at *4 (W.D. Wash. Jan. 21, 2026) ("[Petitioner's] due process claim is not identical to the claims in the *D.V.D.* class action because he seeks a meaningful opportunity to seek withholding of removal in the event he fears persecution in a designated third country—a claim not at issue in *D.V.D*… [D]ismissal of individual claims that duplicate a class action is not required, rather, it is 'within the court's discretion' and grounded in 'its inherent power to control its own docket.'" (quoting *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979)).

The Court also notes that on February 25, 2026, the United States District Court for the District of Massachusetts in *D.V.D.* issued the following decision:

> [T]he April 18, 2025, preliminary injunction, Dkt. 64, is DISSOLVED. Defendants' motion to dismiss is GRANTED in part. Counts II and III are DISMISSED. Counts V and VI, including all claims against Defendant Antone Moniz, are DISMISSED without prejudice. Plaintiffs' motion for summary judgment against the remaining Defendants is GRANTED as to Counts I and IV. Judgment will enter for Plaintiffs as follows:
>
> 1. The Court DECLARES that 8 C.F.R. § 1240.12(d) requires Defendants, before effecting removal of a class member to any third country, to first seek removal to that class member's designated country of removal or specified alternative country or countries of removal, as provided in that class member's final order of removal.
> 2. The Court DECLARES that 8 U.S.C. § 1231(b) requires Defendants, before effecting removal of a class member pursuant to 8 U.S.C. § 1231(b)(2)(E), to first seek removal to that class member's designated country of removal or country or countries of citizenship, if any.
> 3. The Court DECLARES that class members have the right to meaningful notice before removal to any third country.
> 4. The Court DECLARES that class members have the right to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country.
> 5. The Court DECLARES that Defendants' third-country removal policy, as embodied in DHS's March 30, 2025 memorandum, titled "Guidance Regarding Third Country Removals," and ICE's July 9, 2025 memorandum, titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)," is unlawful and SETS ASIDE that policy.
> 6. This JUDGMENT is STAYED until fifteen days from date of issuance or until the First Circuit rules on any motion for an administrative stay or stay pending appeal, whichever occurs first.

*D.V.D. v. U.S. Dep't of Homeland Sec.,* No. CV 25-10676-BEM, 2026 WL 521557, at *44 (D. Mass. Feb. 25, 2026). The Defendants appealed the order and on March 16, 2026, the First

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 16

Circuit Court of Appeals granted the Defendants' request for a stay pending appeal. *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212 (1st Cir.).

Accordingly, the Court declines to exercise its discretion to dismiss Petitioner's claims based on the proceedings in *D.V.D. See Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) (rejecting defendants' "argument that a discrete, individual claim for injunctive relief may be delayed because a pending class action seeks systemic reform relating to the same general subject matter.").

### 2. Due Process – Notice and Opportunity to be Heard

Petitioner further argues that Due Process requires that the Government provide meaningful notice of the third-country removal and an opportunity to respond. Dkt. 1 at 19. Petitioner argues the Government must provide written notice of the country being designated and the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2), the Government must also ask whether Petitioner fears persecution or harm upon removal to the designated third-country, and his response must be memorialized in writing. *Id.* He argues measures must be taken to ensure that if Petitioner makes a claim of fear, he can seek asylum, withholding, and relief under CAT before an immigration judge in reopened removal proceedings. *Id.* at 20.

Petitioner argues that ICE's current third-country removal policy, as set forth in a July 9, 2025 Memorandum, violates Due Process and relevant statutes and regulations because it "directs ICE agents to remove individuals to third countries without any notice or process *at all* where diplomatic assurances are received and, where no diplomatic assurances are received, to provide flagrantly insufficient notice (6-24 hours) and opportunity to respond[.]" *Id.* at 20, 27.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 17

The Government argues that DHS policy already provides for notice and an opportunity to respond, and that Petitioner has been provided this process in this case. Dkt. 9 at 11-12. Specifically, the Government argues that the DHS policy memo dated March 30, 2025, "provides notice will be provided for a petitioner to claim fear of removal to that [third] country, and if petitioner were to claim a fear of removal to that third country, ICE would refer him to USCIS, and USCIS would schedule petitioner for an interview to determine whether it is more likely than not that he will be persecuted or tortured in that third country." *Id.* The Government argues these procedures were complied with and Petitioner was provided notice of ICE's intent to remove him to Mexico on June 25, 2025, that he was referred to USCIS based upon his claim of fear, and USCIS determined Petitioner did not have a positive fear claim if he were to be removed to Mexico. *Id.*

Petitioner produces a copy of the July 9, 2025, memorandum which sets forth the policy he challenges, and which provides, in relevant part:

> Effective immediately, when seeking to remove an [noncitizen] with a final order of removal—other than an expedited removal order under Section 235(b) of the Immigration and National Act (INA)—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, Guidance Regarding Third Country Removals, as detailed below. A 'third country' or 'alternative country' refers to a country other than that specifically referenced in the order of removal.
>
> If the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances. In all other cases, ICE must comply with the following procedures:
> - An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.
> - ERO will not affirmatively ask whether the alien is afraid of being removed to the country of removal.
> - ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 18

Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal

- o  Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.
- If the alien does not affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.
- If the alien does affirmatively state a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to the U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protections under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the alien within 24 hours of referral.
  - o  USCIS will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal. If USCIS determines that the alien has not met this standard, the alien will be removed.
  - o  If USCIS determines that the alien has met this standard and the alien was not previously in proceedings before the immigration court, USCIS will refer the matter to the immigration court for further proceedings. In cases where the alien was previously in proceedings before the immigration court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. In such cases, ERO will alert their local Office of the Principal Legal Advisor (OPLA) Field Location to file a motion to reopen with the immigration court or the Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under section 241(b)(3) of the INA and CAT for the country of removal. Alternatively, ICE may choose to designate another country for removal.

Dkt. 1 (petition), Ex. 3.

The Court in *Rea-Hernandez*, recently summarized the relevant legal framework governing removal to a third-country as follows:

*Only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the United States, or which contains the port from which they disembarked for the United States or a contiguous territory; or (d) the non-citizen's country of birth (or the country that now contains their birthplace) or immediate previous residence may the government remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* at 15–16 (citing 8 U.S.C. § 1231(b)(2)(E)). Even then, the government may not remove any person to a country where they will be persecuted or tortured. *Id.* at 16 (citing 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16). Where third-country removal is anticipated due process requires *inter alia*, notice of the country

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 19

to which the noncitizen will be removed that is not be provided "last minute," but with sufficient time that the noncitizen have a meaningful opportunity to apply for fear-based protection from removal. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). Courts in this District have found, and this Court agrees, that such notice must consist of "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," and that the noncitizen must be affirmatively asked whether they fear persecution or harm upon removal to the third country, with their response memorialized in writing. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019).

If a noncitizen claims fear of removal to a designated third country, courts in this District have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka*, 2025 WL 3204369, at *6; *see Arenado-Borges*, 2025 WL 3687518, at *6 (collecting cases)…. The Court finds the reasoning in *Aden* and the other cases cited above persuasive and concludes that constitutionally and statutorily compliant notice requires that, before Petitioner may be removed to a third country, he must be given an opportunity to respond, and—if he has a fear of persecution or torture— reopened removal proceedings before an Immigration Judge.

*Rea-Hernandez*, 2026 WL 322874, at *8.

And the Court in *Aden v. Nielsen* further made clear that in the context of a third-country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings]...is not an adequate substitute for the process that is due in these circumstances." 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019) (citations omitted). Instead, the removal proceedings must be reopened so that a hearing may be held. *Id.* at 1011. In *Nguyen*, the court found that "[t]he requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country[,]" and further concluded that ICE's current policy governing third-country removals "contravenes Ninth Circuit law." 796 F. Supp. 3d at 727-28.

The Court in *D.V.D.* also recently granted partial summary judgment to plaintiffs declaring DHS and ICE's third country removal policy unlawful and setting aside the policy – a stay was granted by the First Circuit pending appeal. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 2026 WL 521557, at *44 (D. Mass. Feb. 25, 2026); *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212 (1st Cir.).

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 20

The Court adopts the analyses of above opinions and concludes that Petitioner is entitled to the requested relief prohibiting the Government from removing him to a third country without notice and a meaningful opportunity to be heard in compliance with the statute and due process in reopened removal proceedings before an immigration judge.

To the extent the Government argues they have provided Petitioner with adequate process pursuant to DHS policy, this argument fails. As discussed above, the Court finds DHS's/ICE's current policy contravenes Ninth Circuit case law and does not comply with Due Process. Further, although Petitioner was referred to USCIS, which determined he did not have a positive fear, there is no evidence either that the Government has reopened his removal proceedings or that Petitioner has been given the opportunity to reopen removal proceedings for purposes of seeking appropriate relief specifically related to his claim of fear. *See Arenado-Borges v. Bondi*, 2025 WL 3687518 at *6 ("Simply allowing the petitioner *to move to reopen* their immigration proceedings is not enough to satisfy Due Process—the Government must *actually reopen* proceedings so that the petitioner has a fair and adequate opportunity to be heard.").

### 3. Punitive Nature of Removal Policy

Petitioner further argues that the Court should categorically prohibit his removal to any third country on the ground that the Government's third-country removal policy is unconstitutionally punitive in all applications. Dkt. 1 (petition).

Petitioner cites to *Wong Wing v. United States*, 163 U.S. 228 (1896) in support of this claim. Dkt. 1 (petition) at 23. In *Wong Wing*, the United States Supreme Court "held unconstitutional a statute that imposed a year of hard labor upon aliens subject to a final deportation order." *Zadvydas*, 533 U.S. at 694 (citing *Wong Wing*, 163 U.S. 228). As explained by the Court in *Nguyen v. Scott*:

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 21

The Court [in *Wong Wing*] held that while "it is within the constitutional power of congress" to deport those unlawfully present in the United States, Congress could not add to the sanction of expulsion the "punishment by imprisonment at hard labor ... without a trial by jury." [*Wong Wing*, 163 U.S.] at 235, 16 S. Ct. 977. The Court explained that there is a fundamental difference between "detention or temporary confinement" while awaiting deportation and "imprisonment at hard labor." *Id.* at 236, 16 S. Ct. 977. The latter, the Court concluded, was an "infamous punishment" that could only be imposed following a criminal trial with the full protection of the Fifth and Sixth Amendments. *Id.* at 237-38, 16 S. Ct. 977.

796 F. Supp. 3d 703, 733 (W.D. Wash. Aug. 21, 2025). The Court in *Wong Wing* found "that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments, and that even [noncitizens] shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law." 163 U.S. at 238.

In support of this claim, Petitioner cites to, and submits declarations submitted in, *Nguyen*, where the court found the Petitioner likely to succeed on a claim challenging the Government's third-country removal policy as punitive based on sworn declarations that "pre-1995 Vietnamese immigrants who have been deported to South Sudan and Eswatini have been imprisoned incommunicado since their arrival." 796 F. Supp. 3d 703, 734 (W.D. Wash. Aug. 21, 2025).

But here the Government seeks to remove Petitioner —a Cuban national—to Mexico, not to South Sudan or Eswatini. And Petitioner offers no specific evidence that Cuban nationals removed to Mexico face imprisonment or other punitive treatment upon arrival. *See Arenado-Borges*, 2025 WL 3687518 at *7 (Declining to find removal that Petitioner's removal to Mexico "would constitute unconstitutional punishment" where "[Petitioner] has offered no evidence that Cuban nationals removed to Mexico face imprisonment or other punitive treatment upon arrival.").

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 22

On the present record, the Court declines to make a broad ruling prohibiting Petitioner's removal to any third country on the ground that the Government's third-country removal program is unconstitutionally punitive in all applications. The relief granted in this order -- notice and a meaningful opportunity to be heard -- will allow Petitioner to challenge any proposed third-country removal where he can show a risk of imprisonment or other serious harm. *See Coke*, 2026 WL 221514, at *3; *Rea-Hernandez,* 2026 WL 322874, at *5. Nothing in this order prevents Petitioner from pursuing additional relief if warranted by future events. *Id.*

### CONCLUSION

The Court **GRANTS** the federal habeas petition **IN PART**.

1.  The Government is **ORDERED** to release Petitioner from custody within 24 hours of the filing of this order, on the same conditions of his most recent order of supervision, and not to re-detain him without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231.

2.  It is further **ORDERED** that if the Government takes steps to remove Petitioner to any other country than Cuba, it must provide him with written notice of its intent to do so and a meaningful opportunity to respond in compliance with the statute and due process, in reopened removal proceedings before an immigration judge.

3.  Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is **DENIED** without prejudice.

4.  Within 48 hours after Petitioner's release the Government must file with the Court a declaration confirming the date and time Petitioner has been released from custody.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 23

5.      The Court will entertain any appropriate post-judgment request for attorneys' fees.


DATED this 26th day of March, 2026.


_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART - 24